UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EZZIAL WILLIAMS,

                    Plaintiff,

-against-

DAVID FRYERMUTH,
ORANGE COUNTY JAIL,

                    Defendants.

**OPINION & ORDER**

23-CV-2156 (PMH)

PHILIP M. HALPERN, United States District Judge:

Ezzial Williams ("Plaintiff") brings this action *pro se* and *in forma pauperis* against David Freyermuth, sued herein as David Fryermuth,[1] and Orange County Jail, asserting three claims for relief under 42 U.S.C. § 1983 predicated upon violations of her[2] Eighth and Fourteenth Amendment rights and for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Plaintiff commenced this action on March 14, 2023. (Doc. 1). Defendant Freyermuth filed an answer to the complaint on September 29, 2023. (Doc. 22). After an Initial Pretrial Conference held in December 2023, the Court granted Plaintiff's request to file an amended complaint. Defendants received the Amended Complaint on February 26. 2024. (Doc. 36 ¶ 11). In her Amended Complaint (Doc. 29, "Am. Compl."), Plaintiff added "Orange County Jail" as a defendant (together with David Freyermuth, "Defendants").

---

[1] Defendants advise that Plaintiff misspelled Defendant David Fryermuth's last name in the caption of this action. (Doc. 37 at 1 n.1).

[2] Consistent with the Court's understanding of Plaintiff's preference, this Opinion and Order uses female pronouns when discussing Plaintiff's allegations and arguments.

Defendants filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on April 1, 2024. (Doc. 35; Doc. 37).[3] Plaintiff filed an opposition on June 28, 2024 (Doc. 47, "Pl. Br."), and Defendants filed their reply papers on July 14, 2024. (Doc. 48; Doc. 49). On July 31, 2024, Plaintiff filed a declaration in response to Defendants' reply declaration. (Doc. 52, "Pl. Decl.").[4]

For the reasons set forth below, the partial motion to dismiss is GRANTED.[5]

## **BACKGROUND**

Plaintiff alleges that while incarcerated in the Orange County Correctional Facility ("OCCF"), a corrections officer—specifically, Defendant Freyermuth—sexually assaulted her. (Am. Compl. ¶¶ 2-4). She alleges that on July 12, 2022, Defendant Freyermuth called her into a

---

[3] Defendants, in the Notice of Motion, jointly move to dismiss, but only seek "an order dismissing the Amended Complaint, as it pertains to Defendant Orange County Jail." (Doc. 35; *see also* Doc. 49 at 8 ("Defendants only moved to dismiss the claims against Orange County Jail.")). Defendant Freyermuth has not filed an answer to the Amendment Complaint.

[4] Although Plaintiff did not request, and the Court did not grant, leave to file sur-reply, the Court nonetheless considers the declaration on this motion. Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a *pro se* plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))); *see also Davis v. Cnty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) ("[I]n deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a *pro se* litigant attaches to his opposition papers." (internal citations and quotation marks omitted)), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). Accordingly, the Court considers on this motion the additional allegations in Plaintiff's opposition and sur-reply.

[5] Defendants, in the reply brief, argue that "to the extent that plaintiff alleged Fourteenth Amendment claims in her amended complaint, against Defendant Fryermuth, those Fourteenth Amendment claims should be dismissed." (Doc. 49 at 9). The Court declines to address that request, raised for the first time in their reply brief. *See Mikhlyn v. Bove*, No. 08-CV-3367, 2008 WL 4610304, at *1 (E.D.N.Y. Oct. 15, 2008) ("Because [Defendants] have not requested such relief in their notice of motion . . ., however, I decline to address the subject at this time."). Separately, because Defendant Freyermuth filed an answer to the original complaint, but not the Amended Complaint, Defendant Freyermuth's current motion to dismiss the Amended Complaint without seeking any relief actually does nothing to advance his litigation posture here.

2

prison cell to clean it. (*Id.* ¶ 3). Once there, Plaintiff alleges that Defendant Freyermuth "forced her" to "masturbate," and "perform oral sex" on, him. (*Id.*). The incident lasted, as alleged, for ten to fifteen minutes. (*Id.* ¶ 4). Plaintiff allegedly suffered "mental anguish" because of the sexual assault. (*Id.* ¶ 5). Plaintiff alleges that she suffers daily "flashbacks" of the assault and is "always fearful of being raped or sexually abused by officers." (*Id.* ¶¶ 5-6).

As alleged, corrections officers at OCCF are "constantly being accused" of sexually abusing inmates. (*Id.* ¶ 6; Pl. Decl. ¶ 4). Plaintiff alleges that she was previously sexually abused by an OCCF officer. (*Id.*; Pl. Br. at 3). She also points the Court to three other cases in which an OCCF inmate accused Orange County personnel of sexual abuse. (*Id.*). Plaintiff further alleges that despite these prior incidents, "nothing is being done" to prevent future acts of sexual abuse. (Am. Compl. ¶ 6; Pl. Decl. ¶¶ 5, 8-9).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[6] A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162,

4

170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff proceeds under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (alteration in original)).

Defendants only move to dismiss the claims against Defendant Orange County Jail.

I.  **Claims against the Orange County Jail**

Plaintiff names the "Orange County Jail" as a Defendant. However, Plaintiff may not assert claims under Section 1983 against Orange County Jail. Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights under the "Constitution and Laws." 42 U.S.C. § 1983. Orange County Jail is not a "person" within the meaning of Section

5

1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (state is not a "person" for the purpose of Section 1983 claims); *Whitley v. Westchester Cnty. Corr. Fac. Admin.*, No. 97-CV-00420, 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997) (correctional facility or jail not a "person" within the meaning of Section 1983). The Court therefore dismisses Plaintiff's claims against the Orange County Jail for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Given Plaintiff's *pro se* status and likely intention to assert claims against Orange County, and because Defendants have asked for this relief (*see* Doc. 37 at 1 n.2, 13; Doc. 49 at 1 n.2, 9),[7] the Court construes the Amended Complaint as asserting claims against Orange County and directs the Clerk of Court to amend the caption of this action to substitute Orange County Jail with Orange County. *See* Fed. R. Civ. P. 21; *see Ponce-Melendres v. Doe Orange Cnty. Jail Admin. Off.*, No. 20-CV-07710, 2020 WL 7343025, at *2 (S.D.N.Y. Dec. 14, 2020) ("[U]nder Rule 21, courts have substituted as defendants municipalities for their agencies.").

## II. The *Monell* Claim Against Orange County

The Court, having substituted as a Defendant Orange County for Orange County Jail, construes Plaintiff's *Monell* claim as against Orange County. Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *Lockett v. City of Middletown*, No. 19-CV-08255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a

---

[7] Defendants' motion papers, in the section with the *Monell* argument, requested that the Court substitute Orange County for Orange County Jail as a defendant. (*See* Doc. 37 at 1 n.2, 13; Doc. 49 at 1 n.2, 9).

constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). "Plaintiff must plead allegations that 'the government body *itself* subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" *Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original)). Proof of the existence of a municipal policy or custom is required because a plaintiff must demonstrate that "the municipality took some action beyond merely employing the [allegedly] misbehaving officers." *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 390 (S.D.N.Y. 2013) (quoting *Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985)).

There are several ways in which a plaintiff can demonstrate that an official policy or custom existed, including:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Williams v. Lohard*, No. 20-CV-10571, 2022 WL 269164, at *3 (S.D.N.Y. Jan. 28, 2022) (quoting *Chamberlain*, 986 F. Supp. 2d at 390).

Liberally construed, Plaintiff seeks to establish *Monell* liability by alleging that (1) OCCF had a practice of sexually abusing inmates that was so persistent and widespread that it constitutes a "custom or usage" and/or that (2) Orange County's official policy-makers failed to properly train

7

or supervise subordinates at OCCF. (*See* Am. Compl. ¶ 7 ("Orange County Jail . . . have failed to even attempt to remedy the problem, and as such, have knowledge that these type of incidents continuously occur"); Pl. Decl. ¶ 5 ("Defendants failed to properly train and monitor their staff.")).

Under the custom or practice theory of *Monell* liability, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). To prevail under this theory, a plaintiff must show that a "local government [] faced [] a pattern of misconduct and d[id] nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Aquino v. City of New York*, No. 16-CV-01577, 2017 WL 384354, at *3 (S.D.N.Y. Jan. 25, 2017) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).

Plaintiff makes three principal arguments in an effort to demonstrate that OCCF experienced a pattern of sexual abuse by corrections officers and that Orange County did nothing in response. First, Plaintiff repeatedly asserts that sexual abuse by corrections officers are "continuously occurring" at OCCF and being "swept under the rug." (Am. Compl. ¶ 6; *see also, e.g.*, *id.* ¶ 7 (alleging that OCCF "allowed Defendant Fryermuth to violate Plaintiff's Constitutional Rights"); Pl. Br. at 3 ("Orange County Jail [] supervisors are allowing" sexual abuse of inmates); *id.* at 6 ("[T]here have been specific incidents of prior sexual contacts between guards and prisoners."); Pl. Decl. ¶ 5 ("[Orange County Jail] covers up the[] incidents" of sexual abuse by corrections officers)). These general allegations are "conclusory, and therefore must be disregarded." *Tieman v. City of Newburgh*, No. 13-CV-04178, 2015 WL 1379652, at *14 (S.D.N.Y. Mar. 26, 2015) (collecting cases).

Second, Plaintiff alleges that Defendant Orange County had "knowledge" of the risk of sexual abuse by OCCF corrections officers because she was previously "sexually abused at the jail." (Pl. Decl. ¶¶ 4-5; Pl. Br. at 3). But Plaintiff cannot establish a "wide spread practice" "simply by alleging [her] own experiences and then extrapolating to the entire jail population." *Rutherford v. Westchester Cnty.*, No. 18-CV-04872, 2020 WL 433841, at *12 (S.D.N.Y. Jan. 28, 2020); *see also Schuyler v. City of New Rochelle*, No. 23-CV-04151, 2024 WL 167289, at *3 (S.D.N.Y. Jan. 16, 2024) ("[P]laintiff cannot establish a *Monell* claim solely on the circumstances of his own case.").

Finally, Plaintiff identifies three recent cases within this Circuit in which Orange County personnel were alleged to have sexually abused an OCCF inmate. (Pl. Br. at 3 (citing *Cook v. Quattrocchi*, No. 19-CV-11659, 2020 WL 1438518 (S.D.N.Y. Mar. 20, 2020); *Camacho v. DuBois*, No. 21-CV-06180, 2022 WL 17807433 (S.D.N.Y. Dec. 19, 2022); *Ruggiero v. Cnty. of Orange*, No. 19-CV-03632, 2020 WL 5096032 (S.D.N.Y. Aug. 28, 2020)). But none of these cited actions resulted in an adjudication of liability.[8] *See Calderon v. City of New York*, 138 F.Supp.3d 593, 612-13 (S.D.N.Y. 2015) ("None of the lawsuits cited resulted in an adjudication or admission of liability and the number of suits does not suggest a pervasive illegal practice."); *Cruz v. City of New York*, No. 15-CV-02265, 2016 WL 234853, at *5 (S.D.N.Y. Jan. 19, 2016) ("The paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is

---

[8] The court, in *Cook v. Quattrocchi*, dismissed the plaintiff's claims for failure to state a claim on which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). No. 19-CV-11659, Doc. 9. The court, in *Camacho v. DuBois*, dismissed the plaintiff's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). No. 21-CV-06180, 2022 WL 17807433, at *6 (S.D.N.Y. Dec. 19, 2022). Finally, the court, in *Ruggiero v. Cnty. of Orange*, dismissed the plaintiff's claims for failure to prosecute and failure to comply with the court's order pursuant to Federal Rule of Civil Procedure 41(b). No. 19-CV-03632, Doc. 89.

required to state a *Monell* claim." (quoting *Walker v. City of New York*, No. 12-CV-5902, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014))).

Moreover, Plaintiff has failed to plead sufficient detail about these prior suits. The Court therefore cannot ascertain, from the pleadings, whether the alleged conduct resembles the alleged sexual assault here and whether such conduct was widespread. "The absence of such detail dooms Plaintiff's Complaint." *Rutherford*, 2020 WL 433841, at *13 (collecting cases); *see also Maldonado v. Westchester Cnty.*, No. 18-CV-11410, 2021 WL 356155, at *5 (S.D.N.Y. Feb. 2, 2021) ("The complete paucity of detail regarding the other allegedly similar food related lawsuits is insufficient to establish a persistent or widespread practice.").[9] Accordingly, Plaintiff fails to show any pattern—much less a "persistent and widespread" practice—of unconstitutional conduct to constitute a "custom or usage."

Plaintiff also fails to adequately allege her *Monell* claim under a failure to supervise or train theory. With respect to failure to supervise, a plaintiff "must plead that (1) there was a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity, and (2) the municipality consistently failed to investigate those allegations." *Treadwell v. Cnty. of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016). As explained above, Plaintiff fails to allege a "pattern" of unconstitutional activity. Thus, Orange County was not "on notice" of similar constitutional violations. *See Mancuso v. Vill. of Pelham*, No. 15-CV-07895, 2016 WL 5660273, at *10 (S.D.N.Y. Sept. 29, 2016) (collecting cases).

With respect to failure to train, Plaintiff must allege facts that support an inference that "Municipal Defendants failed to train their employees, that they did so with deliberate indifference,

---

[9] Plaintiff also mentions "highly publicized incidents at other NY correctional facilities." (Pl. Br. at 6). Plaintiff, however, fails to identify these other "incidents" with specificity.

and that the failure to train caused his constitutional injuries." *Rutherford*, 2020 WL 433841, at *13. A plaintiff, in its pleading, must also "clearly point out the deficiencies in defendants' training programs." *Vasquez v. City of New York*, No. 20-CV-4641, 2023 WL 8551715, at *6 (S.D.N.Y. Dec. 11, 2023) (collecting cases). Here, Plaintiff's allegations concerning any deficiencies in Orange County's training or supervision protocols are conclusory and lack the specificity required for such a claim. She does not, for instance, allege deficiencies with "procedural manuals or training guides"; nor does she "highlight relevant particular aspects of" OCCF's training. *Id.* at *7; *see also Marte v. New York City Police Dep't*, No. 10-CV-03706, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010) (granting the defendant's motion to dismiss because the plaintiffs did "not ple[a]d any facts that plausibly allege a specific deficiency in the training or supervision program that accounts for deprivation of their constitutional rights"). To the contrary, Plaintiff merely accuses Orange County of failing to "to properly train and monitor [its] staff." (Am. Compl. ¶ 7; *see also* Pl. Br. at 3 (accusing Defendant Orange County Jail of failing to "train [its] employees"). These boilerplate assertions are insufficient to state a *Monell* claim. *See, e.g.*, *Schuyler*, 2024 WL 167289, at *3 (granting the defendant's motion to dismiss and explaining that "Plaintiff's general claim that the County failed to train and supervise its staff" "is insufficient" under *Monell*).

Under a failure-to-train theory, a plaintiff must also plead deliberate indifference—which generally requires "a plaintiff to prove that the constitutional violation underlying h[er] claim was preceded by [a] pattern of similar constitutional violations." *Greene v. City of New York*, 742 F. App'x 532, 536 (2d Cir. 2018); *see also Connick*, 563 U.S. at 61 (explaining that establishing deliberate indifference requires a showing that "[municipal] policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to

11

violate citizens' constitutional rights"). As set forth above, because Plaintiff has not pled a pattern of constitutional violations, this theory likewise fails.

Finally, Plaintiff's extensive reliance on *Cash v. Cnty. of Erie*, 654 F.3d 324 (2d Cir. 2011), is misplaced. (Pl. Br. at 4-8). There, the Second Circuit reversed a district court's order granting the municipal-defendant's Rule 50 motion for judgment notwithstanding the verdict, holding that there was sufficient evidence for the jury to find deliberate indifference to the municipality's affirmative duty to protect female prisoners in their custody from sexual assault. The Second Circuit, in so holding, explained that New York State law "recognize[s]" "a complete prohibition of any sexual activity" between corrections officers and inmates. *Cash*, 654 F.3d at 335. The questions presented were "whether defendants could rely simply on guards' awareness of these criminal laws . . . to deter sexual exploitation of prisoners, or whether defendants had reason to know that more was required to discharge their affirmative protective duty." *Id.* at 336. The court held, based on the evidentiary record from trial, the plaintiff had demonstrated that "defendants had reason to know that more was required more was required." *Id.* Plaintiff argues that the same logic applies here.

The Court disagrees. The Second Circuit, in *Cash*, placed substantial weight on a prior complaint from another female prisoner—the "Allen claim," named after the inmate claimant— which had led to an "internal affairs investigation." *Id.* at 329. Allen informed investigators, in this report, that she had "engaged in sexual activity" with several guards and had "exposed her breasts and fondled herself in front of male guards in exchange for cigarettes or other commissary items." *Id.* at 330. The final report "was skeptical of [the prison guard's] denial and found 'likely . . . sexual contact' between the guard and Allen." *Id.* This report was addressed to the county sheriff, the relevant policy maker under the *Monell* analysis. *Id.* Thus, taken together, the Second Circuit

12

held that "a reasonable jury could have concluded that the [] Allen complaint would have alerted [the sheriff]"—and placed the county on notice—"to the fact" that current policy "had proved an insufficient deterrent to sexual exploitation." *Id.* at 336.

Plaintiff has not pled that Orange County policy makers were in possession of such a report. Indeed, in essence, Plaintiff's theory would create a per se rule in New York that corrections officers and prisoners of the opposite sex could never be left in unmonitored one-on-one interactions—a rule the Second Circuit explicitly rejected in *Cash*. *See id.* (taking "no exception to the district court's [] observation" that "a policy permitting unmonitored one-on-one interactions between a guard and a prisoner of different sexes was not itself unconstitutional" (citing *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir.1993) (rejecting "conclusion that every male guard is a risk to the bodily integrity of a female inmate whenever the two are left alone"))).

Because Plaintiff's allegations do not support claims under *Monell*, her claims against Orange County must be dismissed.

## CONCLUSION

Based on the foregoing, Defendants' partial motion to dismiss is GRANTED.

The Court dismisses Plaintiff's claims against Orange County Jail because this entity cannot be sued under New York law. Orange County is substituted as a Defendant under Fed. R. Civ. P. 21 and those claims alleged against Orange County are dismissed without prejudice for failure to state a claim.

Plaintiff may file a second amended complaint, addressing only the pleading deficiencies discussed herein, within 30 days of the date of this Opinion and Order. Plaintiff is reminded that if she does choose to file a second amended complaint, the second amended complaint will completely replace, not supplement, the Amended Complaint, and any facts or claims that Plaintiff

wishes to maintain must be included in the second amended complaint. In the event that Plaintiff does not file a second amended complaint within 30 days, this case will proceed on the claims alleged in the Amended Complaint against Defendant Freyermuth.

Defendant Freyermuth is directed to file an answer to Plaintiff's Amended Complaint within 14 days of the date of this Opinion and Order.

The Clerk of Court is respectfully requested to: (1) terminate Orange County Jail and substitute Orange County as a Defendant under Fed. R. Civ. P. 21; (2) terminate Orange County as a Defendant; (3) terminate the pending motion (Doc. 35); and (4) mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: White Plains, New York
       October 23, 2024

_____
PHILIP M. HALPERN
United States District Judge